# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 78 HEALTH AND WELFARE FUND, et al,**
**Plaintiffs,**

**-vs-** **Case No. 6:04-cv-463-Orl-28KRS**

**GMI PROFESSIONAL SERVICES, INC., f/k/a GMI Construction Services, Inc., WILLIAM C. SNEED,**
**Defendants.**

---

## REPORT AND RECOMMENDATION

This cause came on for consideration after oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **AMENDED MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST GMI PROFESSIONAL SERVICES, INC. AND WILLIAM C. SNEED INDIVIDUALLY (Doc. No. 35)** |
| **FILED:** | **January 27, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I. PROCEDURAL BACKGROUND.

On April 5, 2005, Plaintiffs International Union of Painters and Allied Trades District Council No. 78 Health and Welfare Fund, through Terry Knowles as Trustee (the “Welfare Fund”), International Union of Painters and Allied Trades Industry Pension Fund, through Gary J. Meyers as Trustee (the “Pension Fund”), which are collectively referred to as “the Trust Funds,”

and International Union of Painters and Allied Trades District Council No. 78 ("the Union"), filed a complaint against Defendants GMI Professional Services, Inc. ("GMI"), and William C. Sneed, alleging violations of sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, and section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. Doc. No. 1. The complaint was served on GMI and Sneed on July 13, 2004. Doc. Nos. 10, 11. Neither of the defendants responded to the complaint or has otherwise appeared in this case.

On September 7, 2004, the plaintiffs moved for entry of a clerk's default with respect to GMI and Sneed. Doc. Nos. 14-15. The Clerk of Court entered a default against both defendants on September 8, 2004. Doc. No. 16.

On April 29, 2005, the plaintiffs filed a motion for a final default judgment. Doc. No. 29. Because the motion sought entry of default judgment based on incomplete information, it was denied without prejudice on June 24, 2005. Doc. No. 30. On January 27, 2006, the plaintiffs filed the present Amended Motion for Entry of Final Default Judgment. Doc. No. 35. The motion was referred to me for issuance of a report and recommendation.

On May 2, 2006, I held a hearing at which counsel for the plaintiffs appeared and provided an explanation for the various figures used in the spreadsheets attached as exhibits to the motion. Counsel provided a corrected version of the spreadsheets, and submitted copies of the other relevant documents, including the collective bargaining agreements and Trust Funds' plan documents. Doc. Nos. 41, 42.

## II. STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the plaintiff's complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must examine the sufficiency of the allegations in a complaint to determine whether a plaintiff is entitled to a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The defaulting defendant does not admit the amount of damages to be awarded. *See Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). The plaintiff has the burden of proving the amount of damages to be awarded. *Id.* "Damages may be awarded only if the record adequately reflects the basis for the award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam)); *see also* Fed. R. Civ. P. 55(b)(2) (permitting the court to hold a hearing on damages where necessary).

The plaintiff has the burden of proving the amount of damages to be awarded. When the employer has violated its statutory duty to keep adequate records, the employee satisfies this burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as

a matter of just and reasonable inference.'" *Combs v. King*, 764 F.2d 818, 825, 827 (11th Cir. 1985) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id*. (quoting *Anderson*, 328 U.S. at 687-88). While *Anderson* was a case brought under the Fair Labor Standards Act, in *Combs*, the Eleventh Circuit expressly extended its holding to ERISA cases. *Id*. at 827.

## III. RELEVANT FACTS.

### *A. Allegations of the Complaint Regarding Liability.*

The Trust Funds are employee pension benefit plans within the meaning of ERISA. Doc. No. 1 ¶¶ 4-5. Terry Knowles, Trustee of the Welfare Fund, and Gary Meyers, Trustee of the Pension Fund, are authorized by the respective plan documents to bring this action. *Id.* ¶¶ 7-9. The Union is an "employee organization" within the meaning of ERISA and a "labor organization" within the meaning of the LMRA. *Id.* ¶ 10. It represents employees in the construction industry, which is an industry or activity affecting commerce within the meaning of ERISA and LMRA. *Id.*

GMI is a Florida for-profit corporation doing business as a painting, decorating, and construction contractor in the Orange County, Florida, area. *Id.* ¶ 11. At all times material, GMI was an employer within the meaning of that term under ERISA and LMRA. GMI's principal place of business is located at 2416 South Lake Orange Drive, Suite 140, Orlando, Florida 32837. *Id.*

GMI's activities affect commerce within the meaning of that term under ERISA and the LMRA. *Id.*

Sneed was the sole or primary owner, principal, and president of GMI, and was responsible for its day-to-day activities and operations. *Id.* ¶¶ 12, 25. Sneed had a duty to collect all monies and other income for the operations of GMI, and to disburse those monies for the payment and satisfaction of GMI's business and operating expenses, including the payment of wages and employee benefit plan fringe benefit contributions. *Id.* ¶ 26.

At all times material, GMI was a party to collective bargaining agreements entered into with the Union. *Id.* ¶¶ 14, 20. Pursuant to these agreements, GMI was required to prepare and submit monthly payroll reports identifying which of their employees were performing work under the agreements, the hours they worked, and the wages earned by each employee. *Id.* Based on these amounts, GMI was to calculate, report, and timely remit the employee benefit plan fringe benefit contributions and all authorized dues, working assessments, and other payroll deductions to the Trust Fund (the "contributions"). *Id.*

The agreements and Trust Funds' plan documents expressly provide that the required contributions were payable by the first day of the month following the month in which the work was done. *Id*. ¶ 27. However, the contributions would be deemed timely if received by the twentieth day of that month. If not received by that day, all such contribution obligations would be deemed delinquent. *Id.* If payments were not timely made, GMI was also required to pay pre and post judgment interest and liquidated damage penalties, plus all collection costs and professional fees incurred by the plaintiffs in collecting the monies due. *Id.* ¶ 20.

Since June 2003, GMI failed to abide by the terms and conditions of the collective bargaining agreements, including those provisions requiring the preparation and submission of the payroll remittance reports reflecting the contributions due and owing, and timely remitting the contributions owed. *Id.* ¶¶ 15, 21.

Sneed also failed to submit the required remittance reports and remit the related contributions, despite the Trust Funds' and the Union's requests for these items. *Id.* ¶ 28. Sneed knew that GMI had sufficient assets to remit the payments owed to the Trust Funds in a timely manner. *Id.* ¶ 28. Sneed made a decision to use monetary assets to pay other obligations of GMI to the exclusion of those he knew were owed to the Trust Funds and the Union. *Id.* ¶ 29.

*B. Evidence of Damages.*

In support of the present motion, the plaintiffs filed the declaration of Robert A. Miles, counsel for the plaintiffs, doc. no. 35, ex. 1 ("Miles Decl."), and spreadsheets titled "I.U.P.A.T. 'Painters' District Council 78 and its Employee Fringe Benefit Trust Funds and GMI Professional Services, Inc." which set out an accounting of the monies that the plaintiffs are owed by GMI, doc. no. 42, exs. 9, 10. At the hearing, counsel for the plaintiffs also submitted copies of the Collective Bargaining Agreements, the Trust Funds' plan documents, remittance reports from the Union's head office, Unemployment Compensation tax documents received from the State of Florida, check stubs for G.L. Lyda, one of the covered employees, and corrected spreadsheets. Doc. No. 42.

According to Miles' declaration, GMI failed to submit the required monthly reports of its employees' work after May 2003. Miles Decl. ¶ 8. GMI ceased employing members of the Union

working in Central Florida after January 2004. *Id.* ¶ 10. The Trust Funds subpoenaed the Unemployment Compensation Tax 6 forms that GMI filed with the Florida Department of Revenue, which identify each of GMI's employees and the gross wages each employee earned quarterly. *Id.* ¶ 8. Further, one covered employee, G.L. Lyda, retained check stubs for payment for work performed during the third and fourth quarters of 2003 and the week ending January 10, 2004. *Id.*

Based on the foregoing information, Miles prepared a spreadsheet in which he identified for each covered employee the number of hours worked in April and May 2003 and the amount of wages paid based upon the tax forms. *Id.* He determined each employee's hourly rate by dividing the number of hours worked into the total amount of wages paid in each month.[1] He used this hourly rate and the employee's position (journeyman or apprentice) to determine the amount of unpaid contributions due for each employee for work performed between June 2003 and January 2004. The total of the unpaid contributions is $7,931.64. Doc. No. 42, ex. 10.[2]

The plan documents also provide that interest is due on unpaid contributions at the rate of 18% compounded annually from the first day of the month following the month in which the work was performed through the date paid. They also provide that statutory liquidated damages are due equaling 20% of the unpaid principal monies owed.

---

[1] The hourly rates per employee sometimes differ month to month because the information available to the plaintiffs was insufficient to determine whether any employee worked overtime hours in any given work week.

[2] The spreadsheet that is exhibit 10 reflects in the legend the method of calculating the amount of contributions due for each employee based on the contribution requirements set forth in the collective bargaining agreements and plan documents.

## V. ANALYSIS.

*A. Liability.*

The plaintiffs base their ERISA claims on 29 U.S.C. §§ 1132[3] and 1145.[4] In essence, these provisions state that employers who are obligated by a collective bargaining agreement to make contributions to a union trust fund must make such contributions in accordance with the terms of the agreement. Failure to comply with the provisions of § 1145 constitutes a violation of ERISA. *Moore v. Amer. Fed'n of Television & Radio Artists*, 216 F.3d 1236, 1245 (11th Cir. 2000).

Accepting the factual allegations of the complaint as true, the Trust Funds are fiduciaries of employee benefit plans covered by ERISA. GMI is an employer as that term is defined by ERISA. GMI agreed through the collective bargaining agreement to make contributions to the Trust Funds pursuant to the terms of collective bargaining agreements. GMI is delinquent in making contributions to the plans as required by the agreements. These facts are sufficient to establish that GMI failed to pay contributions as required by § 1145. Thus, GMI is liable for violations of §

---

[3] Section 1132(a)(3) provides as follows:

> [a] civil action may be brought--by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

[4] Section 1145, provides as follows:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

1145, and the plaintiffs are entitled to entry of a default judgment in their favor with respect to GMI.

Regarding Sneed, an "employer" who may be liable for unpaid ERISA plan contributions includes "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan . . . ." 29 U.S.C. 1002(5); *see also Giardiello v. Balboa Ins. Co.*, 837 F.2d 1566, 1569 (11th Cir. 1988). Thus, the allegations of the complaint that Sneed was the sole or primary owner, principal, and president of GMI and that he was responsible for its day-to-day activities and operations, including payment of contributions owed to the Trust Funds, are sufficient to establish that Sneed is liable as an employer for GMI's delinquent contributions.

*B. Damages.*

ERISA provides that when a judgment is entered in favor of a multi-employer plan under § 1145, the court shall award the plaintiffs the following types of damages:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of–
>
> > (I) interest on the unpaid contributions, or
> >
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

In *Combs*, the Eleventh Circuit held that in ERISA cases, a court may award approximate damages to an employee who is unable to show his exact damages, where the employer has failed to satisfy its duty to maintain the appropriate records. 764 F.2d at 826-27 (citing *Anderson*, 328 U.S. at 687 ). The collective bargaining agreements and plan documents make clear that GMI and Sneed had both a statutory and contractual duty to maintain appropriate records.

1. Unpaid Contributions.

Because the evidence establishes that GMI and Sneed failed to satisfy their statutory and contractual duty to maintain adequate records, it is appropriate to award approximate damages in this case. *Combs*, 764 F.2d at 826-27. After considering the argument of counsel and the documents submitted at the hearing, I conclude that the revised spreadsheets represent a reasonable approximation of the plaintiffs' damages. Miles' declaration and the supporting revised spreadsheets indicate that GMI owes the Trust Funds $7,931.64 in unpaid contributions. This amount should be awarded to the plaintiffs.

2. Interest on Unpaid Contributions.

Prejudgment interest is due on each unpaid contribution from the date that the contribution was due. *See Carriers Container Council, Inc. v. Mobile S.S. Ass'n, Inc.*, 948 F.2d 1219, 1223 (11th Cir. 1991). The evidence established that each monthly payment was due by the first day of the following month, and the summary spreadsheet, doc. no. 42, ex. 9, provides the sums due each month.

Section 1132(g)(2) provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]." The plan documents, which are incorporated by the collective bargaining agreements, provide for such an interest rate of 18%. Doc. No. 42, Ex. 4 at 3-4.

Thus, the amount of prejudgment interest due should be calculated from the dates that the contribution was due until the date that the Court enters its judgment. Prejudgment interest should be calculated separately for each delinquent contribution. *Carriers Container Council, Inc.*, 948 F.2d at 1223-25. I respectfully recommend that the Court direct the plaintiffs to calculate the prejudgment interest due and submit a proposed form of judgment as of a date certain to be established by the Court.

The plaintiffs are also entitled to post-judgment interest. The federal post-judgment interest statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. 1961(a).

3. Liquidated Damages.

The evidence established that the plaintiffs are entitled to liquidated damages equal to 20% of all delinquent principal contributions. Doc. No. 42, Ex. 5 at 45. Accordingly, pursuant to the election of liquidated damages under §1132(g)(2)(C), the plaintiffs should be awarded $1,586.33, which is 20% of the amount of unpaid contributions.

4. Attorney's Fees and Costs.

The Court must award reasonable attorney's fees and costs of the action to an ERISA plan that prevails in an action brought under 29 U.S.C. § 1132(g)(2) to recover delinquent payments.

*Carriers Container Council*, 896 F.2d at 1346. However, any award of fees must be supported by sufficient evidence as explained in *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir. 1988).

The plaintiffs have submitted no evidence to support any award of attorney's fees, nor have they even identified the amount of fees sought. I respectfully recommend that the plaintiffs be given an opportunity to submit an application for attorney's fees and costs following entry of judgment, supported by proper evidence.

## VI. RECOMMENDATION.

Based on the foregoing, I respectfully recommend that the plaintiffs' Amended Motion for Entry of Final Default Judgment, doc. no. 35, be **GRANTED**, and that the Court enter judgment against the defendants in the amount of $9,157.97[5] plus pre and post judgment interest. I further recommend that the Court direct the plaintiffs to submit a proposed judgment with the prejudgment interest calculated as of the date provided by the Court.

I further recommend that the Clerk of Court be directed to enter a judgment consisted with the Order entered on this Report and Recommendation and, thereafter, to close the file. Following entry of judgment, the plaintiffs may submit a Bill of Costs and motion for award of

---

[5] This amount is calculated as follows: $7,931.64 (unpaid contributions) + $1,586.33 (liquidated damages) = $9,157.97.

attorney's supported by evidence as required by *Norman*, 836 F.2d at 1292, within the time provided for by the rules of this Court.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10)** days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on May 9, 2006.

Karla R. Spaulding
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties